**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

RESPONSIBLE OFFSHORE DEVELOPMENT
ALLIANCE,

          Plaintiff,

    v.

THE UNITED STATES DEPARTMENT
OF THE INTERIOR, et al.,

          Defendants,

    and

VINEYARD WIND 1, LLC,

          Intervenor-Defendant.

Civil Action No. 1:22-cv-11172-IT

Hon. Indira Talwani

**JOINT STATEMENT OF FACTS**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Plaintiff, Federal Defendants, and Intervenor-Defendant Vineyard Wind 1, LLC submit this Joint Statement of Material Facts.

**Parties**

1.  Plaintiff, Responsible Offshore Development Alliance ("the Alliance"), is a not-for-profit trade association organized under the Internal Revenue Code § 501(c)(6) and headquartered in Washington D.C. The Alliance is a broad membership-based coalition of fishing industry associations and fishing companies committed to improving the compatibility of new offshore development with their businesses. The Alliance's members own and operate 120 vessels that conduct business in more than 30 fisheries throughout the country. *See* Decl. of Anne Hawkins at 1–2.

2.  The Alliance's goals include:

- Providing a unified voice regarding issues of mutual interest to the commercial fishing industry, related to the siting and operations of new and proposed offshore developments, in order to promote seafood sustainability;

- Acting as a bridge between offshore developers and fishermen to mandate, design, and implement a fair, equitable, and effective fisheries mitigation framework addressing potential direct and indirect fisheries impacts;

- Coordinating among existing local, project-specific, and state advisory groups to streamline advice and minimize duplication of effort, and increase awareness of the need for improved interagency coordination on matters related to ocean planning and development;

- Working to achieve adequate funding for scientific research to inform leasing processes, support mitigation programs, and guide future offshore development planning; and

- Serving as clearinghouse of scientific information and project updates for a better-informed industry and to communicate with Fishery Management Councils regarding industry needs and concerns. *Id.* at 2.

3.  Defendant, United States Department of the Interior ("DOI"), is an agency of the federal government authorized to grant a lease, easement, or right-of-way on the Outer Continental Shelf for activities that produce or support production of energy from oil, gas, and other sources. *Responsible Offshore Development Alliance v. United States Dep't of the Interior, et al.*, Case No. 1:22-cv-00237, ECF 1 ¶ 2 (January 31, 2022).

4.  Defendant, Bureau of Ocean Energy Management ("BOEM"), is a federal agency within the DOI that supervises and approves oil, gas, or renewable energy projects conducted within Outer Continental Shelf leases. *Id.* at ¶ 3.

5.  Defendant, Deb Haaland, is the Secretary of DOI. *Id.* at ¶ 4.

6.  Defendant, Amanda Lefton, previously served as the Director of BOEM but has no current affiliation. Elizabeth Klein is the current Director of BOEM. *Id.* at ¶ 5.

7.   Defendant, the National Marine Fisheries Service ("NMFS"), is a federal agency founded in 1871 and placed within the National Oceanic and Atmospheric Administration ("NOAA") in 1970. NMFS and NOAA are within the Department of Commerce. NMFS administers the Endangered Species Act with regard to marine organisms and has authority to exempt the incidental take and harassment of listed species from the ESA's prohibition. *Id.* at ¶ 6.  Janet Coit is the Assistant Administrator for Fisheries at NMFS.

8.   Defendant, Richard W. Spinrad, is the Administrator of NOAA. He oversees NOAA and is ultimately responsible for the decisions and actions taken by NOAA and its subagency, the National Marine Fisheries Service, including the MMPA Incidental Harassment Authorization. *Id.* at ¶ 7.

9.   Defendant, United States Department of the Army, is an agency of the federal government. *Id.* at ¶ 8.

10. Defendant, United States Army Corps of Engineers (the "Corps"), is a division of the United States Department of the Army. Under the Clean Water Act, the Corps is charged with the issuance of permits to discharge dredged or fill material into the "waters of the United States." *Id.* at ¶ 9.

11. Defendant, Christine Wormuth, is the Secretary of the Army. Secretary Wormuth oversees and is ultimately responsible for the actions taken by the Army and the Corps. *Id.* at ¶ 10.

12. Defendant, Michael Connor is the Assistant Secretary of the Army for Civil Works and is responsible for the Corps' Civil Works program. *Id.* at ¶ 11.

13. Intervenor-Defendant Vineyard Wind 1, LLC ("Vineyard Wind") is based in New Bedford, Massachusetts and is jointly owned by Copenhagen Infrastructure Partners P/S, and

Avangrid Renewables, LLC. ECF No. 3, ¶ 3 (Pachter Decl). Prior to October 2016, Vineyard Wind was called Offshore MW LLC. *Id.* Vineyard Wind has received approval from BOEM to construct and operate an offshore wind energy project ("Project") in BOEM Lease Area OCS-A 0501 off the coast of Massachusetts. BOEM_0077150 (July 15, 2021 COP approval letter).

**BOEM's Issuance of an Outer Continental Shelf Lands Act Lease to Vineyard Wind**

14. In 2009, BOEM began evaluating the possibility of developing wind energy in the Outer Continental Shelf (OCS) offshore Massachusetts. BOEM_0068786 (FEIS Vol. II) at BOEM_0069170. BOEM established an intergovernmental renewable energy task force comprised of elected officials from state, local and tribal governments and representatives of affected federal agencies to coordinate with BOEM throughout the leasing process. BOEM_0068786 at BOEM_0069170; 75 Fed. Reg. 82,055, 82,056 (Dec. 29, 2010).

15. In December 2010, BOEM published a Request for Interest ("RFI") in the Federal Register to determine if there was commercial interest in wind energy development in an approximately 2,224 square nautical mile area of the OCS offshore Massachusetts. 75 Fed. Reg. at 82,055. The RFI also invited the public to provide information on environmental issues and data for BOEM to consider in deciding whether to issue leases for wind energy development in the area. BOEM_0068786 (FEIS Vol. II) at BOEM 0069170; 75 Fed. Reg. at 82,055.

16. In February 2012, BOEM published a Call for Information and Nominations ("Call") in the Federal Register to solicit industry interest in acquiring commercial leases for developing wind energy projects in the Call area. BOEM_0068786 (FEIS Vol. II) at BOEM_0069170; 77 Fed. Reg. 5821 (Feb. 6, 2021). BOEM also published a Notice of Intent to prepare an Environmental Assessment for commercial leasing and site assessment activities offshore Massachusetts. BOEM_0068786 at BOEM_0069170; 77 Fed. Reg. 5830 (Feb. 6, 2012).

4

17. Before it set the parameters of the WEA, "BOEM worked closely with the Massachusetts Intergovernmental Task Force, Federal agencies, federally recognized Tribes, the public and other stakeholders between November 2009 and May 2012." *Id.* BOEM also met "with state led working groups" established to facilitate consultation with private interests, including "the Fisheries Working Group on Offshore Renewable Energy." *Id.* As a result of these consultations, and information obtained in response to the Request for Interest and Call for Information published in the Federal Register, "BOEM removed more than 50 percent of the originally identified area in order to avoid specific areas, including shipping lanes and traffic separation schemes, commercial and recreational fishing areas of interest, and the Nantucket Lightship Habitat Closure Area." *Id.*

18. BOEM identified the reduced WEA in May 2012. BOEM_0068786 (FEIS Vol. II) at BOEM_0069170; BOEM_0000001 (May 30, 2012 Announcement of Area Identification).

19. BOEM prepared an Environmental Assessment ("EA") under the National Environmental Policy Act ("NEPA") in May 2012 and a Revised Environmental Assessment in June 2014 to inform its decisions to issue leases in the WEA and to approve site assessment plans for the assessment of the wind resources on those leases. BOEM_0000090 (2014 Revised Environmental Assessment) at BOEM_0000118.

20. In June 2014, BOEM published a proposed sale notice and invited public comment on a proposal to sell commercial wind energy leases in the Wind Energy Area. 79 Fed. Reg. 34,771 (June 18, 2014). BOEM then published a final sale notice announcing that it would sell four commercial wind energy leases in the Wind Energy Area in a public auction on January 29, 2015. BOEM_0068786 (FEIS Vol. II) at BOEM_0069171; 79 Fed. Reg. 70,545 (Nov. 26, 2014).

21. Vineyard Wind (then called Offshore MW LLC) won Lease OCS-A 0501 ("Vineyard Wind lease") at the auction. BOEM_0068786 (FEIS Vol. II) at BOEM_0069171. The lease covers 166,886 acres in the OCS. BOEM_0000764 (April 1, 2015 Lease) at BOEM_0000776.

**BOEM's NEPA Review and Approval of Vineyard Wind's COP for the Project**

22. On December 19, 2017, Vineyard Wind submitted a proposed Construction and Operations Plan ("COP") for the Project. BOEM_0006004 (Letter Submitting COP); BOEM_0000866–6003 (COP). The COP proposed the development of a wind energy project with the capacity to generate approximately 800 megawatts ("MW") of electricity. BOEM_0006004; BOEM_0076799 (ROD) at BOEM_0076803. The Project will be constructed in what is referred to as the wind development area ("WDA")—an area of approximately 65,296 acres of the Vineyard Wind lease area. BOEM_0077150 at BOEM_0077261 (COP Approval Letter). The WDA is approximately 14 miles southeast of Martha's Vineyard. BOEM_0076799 at BOEM_0076808.

23. The COP states that "[c]onstruction of the Project will require the use of an array of vessels." BOEM_0002451. "Vessel details are anticipated to be further refined in the Fabrication and Installation Report ('FIR'). Due to variable availability and limitations associated with the Jones Act, vessels may even be changed out just prior to or during construction." *Id.*

24. During BOEM's review process, Vineyard Wind updated the COP to address comments from BOEM, modifications of the project envelope, and the selection of the location of the onshore substation. BOEM_0076922 (OCSLA Compliance Memo) at BOEM_0076926; BOEM_0068786 (FEIS Vol. II) at BOEM_0069170; BOEM_0067698 (Jan. 22, 2021 Letter).

25. Notice of the public scoping meetings were published the following newspapers: the Cape Cod Times (BOEM_0012044), MVT (BOEM_0012045, BOEM_0012046), Nantucket Inquirer and Mirror (BOEM_0012047), and the Independent (BOEM_0012048).

26. In April 2018, BOEM held public scoping meetings in four towns in Massachusetts (New Bedford, Vineyard Haven, Nantucket, and Hyannis) and one town in Rhode Island (Kingston). BOEM_0012406–12537 (New Bedford Tr.); BOEM_0012538–12626 (Vineyard Haven Tr.); BOEM_0012733–12805 (Nantucket Tr.); BOEM_0012806–12944 (Hyannis Tr.); BOEM_0012955–13078 (Kingston Tr.).

27. On December 7, 2018, BOEM published in the Federal Register a notice of the availability of the DEIS for the Vineyard Wind COP, which also was posted on BOEM's website. BOEM_0034694–95 (83 Fed. Reg. 63,184). The notice invited the public to comment on the DEIS by submitting written comments and/or attending public hearings. BOEM_0034694–95.

28. During the comment period (which lasted until February 22, 2019), BOEM received a total of 341 unique submittals from the public, agencies, and other interested groups and stakeholders. BOEM_0076799 (ROD) at BOEM_0076803; BOEM_0069428 (FEIS Vol. III) at BOEM_0069441–69805 (FEIS Vol. III, listing comments); BOEM_0078447  0079591 (Comments on the DEIS).

29. On February 22, 2019, the Alliance submitted comments on the DEIS and associated COP. BOEM_0079129-55. Among other things, the Alliance's comments:

- Criticized the cumulative impact analysis in the DEIS "because it considers the development of all adjacent lease sites (with the exception of the South Fork project) not to be 'foreseeable,'" and therefore "ignores them in its analysis." BOEM_0079147. The

Alliance said that "[g]iven the huge amount of money spent on the most recent lease

sales, and the significant costs incurred by survey and other work on neighboring lease

sites, it is certainly reasonable to expect that there will be additional wind energy

facilities other than the South Fork project near the Vineyard Wind WDA."

BOEM_0079148.

- Said that it is of "key importance" that the Project's "cable is—and remains—buried,"
  and asked that Vineyard Wind do a "Cable Burial Risk Assessment" and monitor the
  cable after it is installed. BOEM_0079132-22.

- Said that to reduce the risk of "negative interactions" between fishing and construction
  vessels, "cable laying and construction vessels" for the Project should have "dedicated
  personnel on board to communicate with fishing vessels in the area." BOEM_0079151.

30. The new transit lane alternative was included in response to a proposal from the Alliance

to include a northwest/southeast transit corridor to facilitate vessel transit from southern New

England ports to fishing areas on Georges Bank. BOEM_0056958; see also BOEM_0068491-96,

68732-34, 68749-52.

31. During the public comment period on the supplement to the DEIS (which lasted until July

27, 2020), BOEM received 29,987 submissions from the public, agencies, and other interested

groups and stakeholders. BOEM_0069428 (FEIS Vol. III) at BOEM_0069806. The comments

included unique submissions as well as variant and non-variant form letter submissions.

BOEM_0069428 at BOEM_0069806; BOEM_0069428 at BOEM_0069807–70058 (listing

comments); BOEM_0058001–146 (June 26, 2020 Hearing Tr.); BOEM_0079606 – 0112693

(comments on supplement to DEIS).

32. During the public comment period, BOEM also held five virtual public meetings to discuss the supplement to the DEIS. BOEM_0076799 (ROD) at BOEM_0076803; BOEM_0058001–146 (June 26, 2020 Hearing Tr.); BOEM_0058202–58328 (June 30, 2020 Hearing Tr.); BOEM_0058365–58501 (July 2, 2020 Hearing Tr.); BOEM_0058589–58800 (July 7, 2020 Hearing Tr.); BOEM_0059154–59241 (July 14, 2020 Hearing Tr.).

33. On December 1, 2020, Vineyard Wind submitted a letter to BOEM notifying the agency of its intent to withdraw the COP from further review. BOEM_0067649 (Vineyard Wind Letter to withdraw COP 2020); BOEM_0076922 (OCSLA Compliance Memo) at BOEM_0076926. Vineyard Wind indicated in the letter to BOEM that it had decided to use Haliade-X wind turbines manufactured by General Electric, and its project team needed to conduct a technical and logistical review associated with the inclusion of the Haliade-X into the final project design. BOEM_0067649. Vineyard Wind stated that this final due diligence review of the Project would confirm the absence of any elements that could lead to modifications after publication of the Final Environmental Impact Statement ("FEIS"), and thereby cause further delays and additional supplemental reviews by BOEM. BOEM_0067649. Vineyard Wind said it would keep BOEM informed of the progress of its due diligence review, as well as an expected date for rescinding this temporary withdrawal of the COP. BOEM_0067649.

34. On December 4, 2020, the Alliance wrote a letter to the Secretary of the Interior and the Acting Director of BOEM expressing concern over Vineyard Wind's temporary withdrawal of the COP and to "respectfully request that [they] exercise the utmost transparency and adhere to the National Environmental Policy Act ("NEPA") review process." BOEM_0067665. The Alliance said that "[i]f changes are proposed to the project design that are beyond the scope of

the soon-to-be published FEIS, this would require the re-initiation of environmental review, with additional public comment opportunity." *Id.*

35. On December 16, 2020, BOEM published a Notice in the Federal Register stating that because "the COP has been withdrawn from review and decision-making, there is no longer a proposal for major federal action awaiting technical and environmental review, nor is there a decision pending before BOEM." BOEM_0067694 (85 Fed. Reg. 81486 (Dec. 16, 2020)). Thus, the "notice advises the public that the preparation of an EIS is no longer necessary, and the process is hereby terminated." *Id.*

36. On March 3, 2021, BOEM published a notice in the Federal Register stating that it was resuming the preparation of a final environmental impact statement for the COP. 86 Fed. Reg. 12,494 (Mar. 3, 2021).

37. On March 12, 2021, BOEM published in the Federal Register a notice of the availability of the FEIS for the Vineyard Wind COP, which was posted on BOEM's website. BOEM_0071036 (86 Fed. Reg. 14,153 (Mar. 12, 2012)).

38. The FEIS includes four volumes. Volume I contains three sections: Introduction, Alternatives Including the Proposed Action, and Affected Environment and Environmental Consequences. BOEM_0068456-59. Volume II contains Appendices A-J, including Appendix A (Planned Action Offshore Wind Scenario and Assessment of Resources With Minor Impacts) and Appendix D (Mitigation and Monitoring). BOEM_0068459. Volumes III and IV contain public comments and responses thereto. *Id.*

39. The FEIS also identified a preferred alternative. BOEM_0068498, 68502. BOEM described the preferred alternative as follows:

> BOEM has identified the combination of Alternatives C (No Surface Occupancy in the Northernmost Portion of the Project Area Alternative),

10

D2 (East-West and One-Nautical-Mile Turbine Eayout), and E (Reduced Project Size Alternative) as its preferred alternative (Preferred Alternative) (Figure 2.5-1). Alternative E would limit the proposed Project to 57 to 84 WTGs. The Preferred Alternative would entail the construction, operation, maintenance, and eventual decommissioning of an 800 MW large-scale commercial wind energy facility consisting of no more than 84 WTGs on the OCS offshore Massachusetts within the proposed WDA with the export cable making landfall at Covell's Beach. The Preferred Alternative would allow up to 84 turbines to be installed in 100 of the 106 proposed locations and would prohibit the installation of WTGs in 6 locations in the northernmost portion of the WDA. The Preferred Alternative would require the WTGs to be arranged in a north-south and east-west orientation with a minimum spacing of 1 nautical mile between them, and 0.6- to 0.8-nautical-milewide lanes when traveling northwest-southeast or northeast-southwest. The Preferred Alternative would conform to the design parameter ranges outlined in the Vineyard Wind COP, which includes measures that Vineyard Wind has voluntarily committed to implement to avoid or reduce impacts, except that cabling is likely to exceed the COP design parameters. Impacts from such additional cabling have been considered within this FEIS.

BOEM_0068502.

40. The FEIS summarizes the Alliance's comments on the DEIS and SEIS and provides responses. BOEM_69601-23; BOEM 70708-09.

41. The FEIS said that Vineyard Wind would prepare a cable risk assessment, BOEM 0069604, and one of the mitigation measures requires post-installation cable monitoring. BOEM_0069199 (FEIS mitigation measure 18 requires inspections of inter-array and export cable at specified intervals, and also requires that the export cable be monitored continuously with a Distributed Temperature Sensing System); see also USACE_AR_011500 (same requirement in ROD condition 18); BOEM_0077164-65 (Condition 2.7 of COP approval).

42. FEIS mitigation measure 73 says "Vineyard Wind shall establish clear daily two-way communication channels between fishermen and the Project during construction." BOEM_0069223); *see also* USACE_AR_011533 (same requirement in ROD condition 73); BOEM_0077222 (Condition 6.1 of COP approval).

43. On May 10, 2021, BOEM, the Army Corps, and NMFS Office of Protected Resources ("NMFS/OPR") issued a joint Record of Decision ("ROD") for the FEIS. BOEM_0076799 76898 (ROD or JROD). The joint ROD addressed BOEM's action to approve the COP under section 8(p) of OCSLA, the Army Corps' permitting actions under section 404 of the Clean Water Act ("CWA") and section 10 of the Rivers and Harbors Act ("RHA"), and NMFS/OPR's action of issuing an Incidental Harassment Authorization ("IHA") under the Marine Mammal Protection Act (MMPA). BOEM_0076799 at BOEM_0076801.

44. The section of the joint ROD addressing the approval of the COP was signed by Laura Daniel-Davis, Principal Deputy Assistant Secretary, Land and Minerals Management, in the Department of the Interior. BOEM_0076799 (ROD) at BOEM_0076821–76827. It said that the Department of the Interior has decided to approve the COP for Vineyard Wind using a combination of alternatives that were considered in the FEIS. BOEM_0076821. In the FEIS, BOEM identified this combination as its environmentally preferred action alternative ("Preferred Alternative"). BOEM_0076821.

45. The COP approval did "not authorize the commencement of Outer Continental Shelf (OCS) construction activities prior to June 1, 2022." BOEM_0077152 (Condition 1.2).

**Army Corps Review and Approval of Vineyard Wind's Permit Applications**

46. On November 27, 2018, Vineyard Wind submitted to the Army Corps, New England District, an application for a Department of the Army ("DA") permit, which was ultimately issued pursuant to section 10 of the Rivers and Harbors Act of 1899, 33 U.S.C. § 403, and section 404 of the Clean Water Act, 33 U.S.C. § 1344. USACE_AR_000025-003382 (USACE Permit Application).

47. On December 26, 2018, the Army Corps issued a public notice of Vineyard Wind's permit application and solicited comments from the public. USACE_AR_003865–85 (USACE Public Notice of Permit Application). The public notice stated that BOEM was the "lead Federal agency" for the Project and that BOEM had prepared a draft environmental impact statement (DEIS) under NEPA. USACE_AR_003865–3866. The public notice further explained that BOEM would be holding five public comment meetings on the DEIS in January 2019, and it gave the dates and locations of each of those meetings. USACE_AR_003866.

48. During 30-day public comment period—December 26, 2018, to January 18, 2019—the Army Corps received no comments from the general public and just two comments from state and municipal entities. USACE_AR_012641 (ROD) at USACE_AR_12645; USACE_AR_003890-003910. The Army Corps received no requests for an extension of the comment period, and no public comments were submitted after the public comment period closed. USACE_AR_012670. The Army Corps received no requests for public meetings. USACE_AR_012670.

49. On August 6, 2021, the Army Corps prepared a supplement to the ROD. USACE_AR_011889 (2021 ROD Supplement) at USACE_AR_011889-011893.

50. On August 6, 2021, after signing the supplement to the ROD that was prepared the same day, the Army Corps sent Vineyard Wind a proffered DA permit with information on required next steps for finalizing the permit. USACE_AR_011894-012626 (Cover Email and Attachments).

51. Vineyard Wind signed the proffered DA permit and returned it to the Army Corps on August 9, 2021. USACE_AR_012627–12632 (Cover Email and Signed Proffered DA Permit).

52. On August 10, 2021, the Army Corps provided Vineyard Wind with the final DA Permit (Permit No. NAE-2017-01206) that was signed by the Army Corps as well as by Vineyard Wind. USACE_AR_012633-12634 (e-mail); USACE_AR_012639-12640 (letter); USACE_AR_012635-12638 (signed permit).

53. On January 14, 2022, the Army Corps issued a supplement to the ROD. USACE_AR_014373 (2022 ROD Supplement) at USACE_AR_014373.

**ESA Consultation with NMFS/Greater Atlantic Region and Action Agency Adoption of its Biological Opinions**

54. On December 6, 2018, BOEM requested consultation with NMFS's Greater Atlantic Regional Office ("NMFS/GAR") under section 7 of the ESA about the proposed Federal actions related to the Project. BOEM_0034553 (December 6, 2018 BOEM ESA Consultation Request to NMFS). In making this request, BOEM was acting as "the lead federal agency for purposes of section 7 consultation," seeking consultation concerning its own approval of the COP and also for the "other action agencies" making decisions about the Project, including the Army Corps and NMFS/OPR. BOEM_0077276 at BOEM_0077279. BOEM also submitted a biological assessment (BA) it had prepared in support of consultation. BOEM_0034553 at BOEM_0034556–688 (December 2018 BA).

55. NMFS/GAR requested additional information from BOEM in March and April of 2019. See NMFS_00016008 (May 01, 2019 NMFS Initiation Letter to BOEM); *see, e.g.,* NMFS_00016622 (March 14, 2019 Letter to BOEM); NMFS_00062119 (April 10, 2019 Response to NMFS). After receiving the information requested from BOEM, NMFS/GAR agreed with BOEM on May 1, 2019, to initiate formal consultation to consider the effects of the proposed actions on ESA-listed whales, sea turtles, fish, and designated critical habitat that may

be present in the action area. NMFS_00016008; NMFS_00017176 at 00017180 (Consultation history in 2021 BiOp).

56. During the consultation process, NMFS/GAR received additional information from BOEM about the Project. NMFS_00017176 (2021 BiOp) at 00017180-81; NMFS_00062296 (May 12, 2020 email); NMFS_00062297 (May 11, 2020 BA Supplemental Information). NMFS/GAR also considered the supplemental DEIS that was issued on June 12, 2020. NMFS_ 00017176 (2021 BiOp) at 00017180.

57. On September 11, 2020, NMFS/GAR issued a Biological Opinion (2020 Biological Opinion or 2020 BiOp) pursuant to section 7(a)(2) of the ESA. NMFS_00016027 (September 11, 2020 NMFS BiOp Transmittal Letter to BOEM); NMFS_00016029 (2020 BiOp). The 2020 Biological Opinion included an incidental take statement (ITS) that specified Reasonable and Prudent Measures (RPMs) and their implementing Terms and Conditions to minimize and document the amount or extent of any incidental taking of protected species. NMFS_00016027 (Sept. 11, 2020 Letter); NMFS_00016029 (2020 BiOp) at 00016317-16328. On September 17, 2020, BOEM distributed the final 2020 BiOp to representatives of the other action agencies. BOEM_0061037 (September 17, 2020 Email from Brian Krevor, BOEM); NMFS_00017176 (2021 BiOp) at 00017180 (Consultation history in 2021 BiOp).

58. On May 7, 2021, two months after issuing the final EIS, BOEM submitted a request to NMFS to reinitiate consultation pursuant to section 7 of the ESA. BOEM_0076721.

59. On May 27, 2021, NMFS/GAR advised BOEM that it agreed that consultation must be reinitiated. NMFS_16663 (Response Letter from NMFS to BOEM). NMFS/GAR anticipated that reinitiation of consultation would result in a new biological opinion that would replace the 2020 Biological Opinion. NMFS_00016663; NMFS_00017176 (2021 BiOp) at 00017180.

NMFS/GAR said its new Opinion would "consider the changes to the proposed action (i.e., inclusion of surveys as outlined in [BOEM's] May 7, 2021, letter and BA), review any new information on listed species, including North Atlantic right whales, and [would] update the analysis as necessary." NMFS_00016663. NFMS/GAR also advised that "the new Biological Opinion may include a revised Incidental Take Statement," and that "[d]uring the consultation period, pursuant to Section 7(d) of the ESA, [BOEM] and Vineyard Wind must not make any irreversible or irretrievable commitment of resources that would foreclose the formulation or implementation of any reasonable and prudent alternatives to avoid jeopardizing endangered or threatened species or destroying or adversely modifying any critical habitat." NMFS_00016663; NMFS_00016664.

60. On October 18, 2021, NMFS/GAR concluded the consultation and issued to BOEM a new biological opinion (2021 Biological Opinion, uncorrected, or 2021 BiOp, uncorrected, stating "[t]his Opinion replaces the Opinion we issued to you on September 20, 2021." NMFS_00016668 (NMFS Transmittal Letter to BOEM, uncorrected); *see also* NMFS_00016670 (2021 BiOp, uncorrected). Soon after, NMFS/GAR issued to BOEM and other action agencies a corrected transmittal letter and a corrected Biological Opinion. NMFS_00017172 (November 1, 2021 Letter from NMFS to BOEM re Corrections); NMFS_00017170 (Corrected Transmittal Letter to BOEM); NMFS_00017176 (2021 BiOp, as corrected).

61. NMFS/OPR adopted the 2021 BiOp, and advised NMFS/GAR of its determination pursuant to 50 C.F.R. § 402.15(a). NMFS_00003557 (December 2021 Memo to Record on 2021 BiOp); BOEM_0077788 (BOEM ESA Section 402.15(a) Determination); USACE_AR_014375 (Corps ESA Section 402.15(a) Determination)).

**NMFS/OPR's Issuance of an Incidental Harassment Authorization under the Marine Mammal Protection Act**

62. On September 7, 2018, Vineyard Wind submitted to NMFS/OPR a request under section 101(a)(5)(D) of the MMPA for an incidental harassment authorization ("IHA") to take by Level A and Level B harassment marine mammals incidental to impact pile driving during construction of the Project. NMFS_00014218 (Draft IHA Application); NMFS_00014451 (E-mail Submission).

63. Vineyard Wind submitted revised IHA applications to NMFS/OPR in October 2018 and January 2019. See NMFS_00014457 (October 2018 E-Mail Submission); NMFS_00014581 (January 2019 E-Mail Submission); NMFS_00014737 (January 2019 IHA Application); see also NMFS_00003559 (Proposed IHA Decision Memo).

64. On April 30, 2019, NMFS/OPR published a notice in the Federal Register regarding its proposal to issue an IHA to Vineyard Wind in Lease Area OCS-A 0501. NMFS_00003392 (Notice of Proposed Incidental Harassment Authorization, 84 Fed. Reg. 18,346). The notice identified the species that potentially could be taken by harassment resulting from pile-driving noise exposure incidental to the installation of the wind turbine generators and electrical service platforms. NMFS_00003396. The notice invited public comment on the proposal to issue an IHA.

65. The notice also stated that NMFS/OPR would review the potential impact of issuance of an IHA on the human environment under NEPA by participating in BOEM's NEPA review of the Vineyard Wind COP as a cooperating agency. NMFS_00018265 (84 Fed. Reg. 18,346). NMFS/OPR planned to adopt BOEM's environmental impact statement provided that NMFS's "independent evaluation of the document finds that it includes adequate information analyzing the effects on the human environment of issuing the IHA." *Id.*

66. On May 10, 2021, BOEM, the U.S. Army Corps of Engineers (Army Corps), and NMFS/OPR issued a joint ROD for the FEIS. BOEM_0076799 76898 (ROD). The joint ROD stated that NMFS/OPR's final decision to issue the requested IHA would be documented in a separate Decision Memorandum. BOEM_0076799 at BOEM_0076845.

67. On May 13, 2021, NMFS/OPR issued a memorandum to document and provide an explanation for its adoption of BOEM's 2021 FEIS. NMFS_00003467 (May 13, 2021 VW Adoption Memo).

### Procedural History

68. The Alliance filed its complaint in the District Court for the District of Columbia on January 31, 2022. *Responsible Offshore Development Alliance v. United States Dep't of the Interior, et al*., Case No. 1:22-cv-11172-IT (ECF 1) (Filed: January 31, 2022).

### Fisheries Considerations

69. Of the approximately 4,300 vessels that in 2017 had active permits for commercial or for-hire recreational fisheries in the Northeast Region (Virginia to Maine), just 5 percent (approximately 225 vessels) had reported fishing in the wind development area for Vineyard Wind's Project. BOEM 0076944 & n.114 (citing NMFS data); *see also* USACE_AR_008771. Most of those permits "source less than 2 percent of their income from the Project area." BOEM 0076944 & n.115 (citing NMFS data between 2008 and 2018).

70. BOEM prohibited placement of wind turbine generators in the six northernmost placement locations "to provide more unobstructed space in the northernmost area, which is commonly used by commercial fisheries, including scallop and surf clam/ocean quahog fishery." BOEM 0076944; *see also* BOEM_0077224 (COP Condition 7.1).

71. To mitigate impacts on commercial fishing, Vineyard Wind is required (1) to continuously monitor the export cable to determine if conditions have changed that "warrant remedial action to avoid adverse impact to fisheries;" (2) "establish clear daily two-way communication channels between fishermen and the Project during construction;" and (3) provide the fishing community with electronic charts "showing the as-built location of Project components." BOEM 0076945 & n.121 (citing FEIS, vol. II, app. D).

72. The "Coast Guard met multiple times with commercial fishing operators and interest groups who repeatedly indicated that they required one nautical mile (1 nm) of spacing between turbines in an east-west orientation to continue to actively fish within a wind farm." BOEM_0066148.

Dated:  March 28, 2022

Respectfully submitted,

/s/ Roger J. Marzulla
ROGER J. MARZULLA (*pro hac vice*)
D.C. Bar No. 394907
roger@marzulla.com
MARZULLA LAW LLC
1150 Connecticut Ave. NW, Suite 1050
Washington, DC 20036
Telephone: (202) 822-6760
Facsimile: (202) 822-6774

/s/ Ira H. Zaleznik
IRA H. ZALEZNIK (BBO #538800)
izaleznik@lawson-weitzen.com
LAWSON & WEITZEN, LLP
88 Black Falcon Ave., Suite 345
Boston, MA 02210-2414
Telephone: (617) 439-4990
Facsimile: (617) 439-3987

*Attorneys for Responsible Offshore Development Alliance*

/s/ Jack W. Pirozzolo
Jack W. Pirozzolo (BBO # 564879)
Sidley Austin LLP
60 State Street, 36th Floor
Boston, MA 02109
(617) 223-0304
jpirozzolo@sidley.com

David T. Buente, Jr. (*pro hac vice*)
Peter C. Whitfield (*pro hac vice*)
James R. Wedeking (*pro hac vice*)
Brooklyn N. Hildebrandt (*pro hac vice*)
Sidley Austin LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
dbuente@sidley.com
pwhitfield@sidley.com
jwedeking@sidley.com
bhildebrandt@sidley.com

*Counsel for Vineyard Wind 1 LLC*

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division

/s/ Perry M. Rosen
PERRY M. ROSEN
Environmental  Defense Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 353-7792
E-mail:  perry.rosen@usdoj.gov

MARK ARTHUR BROWN
Senior Trial Attorney
Wildlife and Marine Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0204
Fax: (202)  305-0275
E-mail:  mark.brown@usdoj.gov

LUTHER L. HAJEK
ANGELA ELLIS
Natural Resources Section
999 18th St., South Terrace, Suite 370
Denver, CO 80202
Tel: (303) 844-1376
Fax: (303) 844-1350
E-mail:  luke.hajek@usdoj.gov

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 28th day of March 2023, a true and complete copy of the foregoing has been filed with the Clerk of the Court pursuant to the Court's electronic filing procedures, and served on counsel of record via the Court's electronic filing system.

/s/ Jack W. Pirozzolo
Jack W. Pirozzolo