UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SEAFREEZE SHORESIDE, INC, et al.,          *
                                            *
                Plaintiffs,                 *
                                            *
        v.                                  *          Case No. 1:22-cv-11091-IT
                                            *
THE UNITED STATES DEPARTMENT               *
OF THE INTERIOR, et al.,                    *
                                            *
                Defendants                  *
                                            *
        and                                 *
                                            *
VINEYARD WIND 1, LLC                        *
                                            *
                Intervenor-Defendant.       *
* * * * * * * * * * * * * * * * * * * * * * * *
RESPONSIBLE OFFSHORE                        *
DEVELOPMENT ALLIANCE,                       *
                                            *
                Plaintiff,                  *
                                            *          Case No. 1:22-cv-11172-IT
        v.                                  *
                                            *
UNITED STATES DEPARTMENT                    *
OF THE INTERIOR, et al.,                    *
                                            *
                Defendants                  *
                                            *
        and                                 *
                                            *
VINEYARD WIND 1, LLC                        *
                                            *
                Intervenor-Defendant.       *

<u>MEMORANDUM & ORDER</u>

September 25, 2023

TALWANI, D.J.

        Members of the commercial fishing industry brought the two above-captioned lawsuits

challenging actions taken by several federal agencies and associated officials in the approval of

an offshore-wind energy project to be constructed and operated by Intervenor-Defendant

Vineyard Wind 1 LLC ("Vineyard Wind") in the Outer Continental Shelf off the coast of

Martha's Vineyard and Nantucket, Massachusetts (the "Vineyard Wind Project" or the

"Project").[1] The parties' cross-motions for summary judgment are pending and will be addressed

in a separate order. For the reasons that follow, Plaintiffs' motions to strike documents from and

supplement the Administrative Record are DENIED.

### I.      Procedural Background

The above-captioned actions were originally filed in the District Court for the District of

Columbia.[2] Plaintiffs Seafreeze Shoreside, Inc., Long Island Commercial Fishing Association,

Inc., XIII Northeast Fishery Sector, Inc., Heritage Fisheries, Inc., Nat. W., Inc., and Old Squaw

Fisheries, Inc. (collectively, the "Seafreeze Plaintiffs") in Seafreeze Shoreside, Inc., et al. v. The

United States Department of the Interior, et al. ("Seafreeze") [1:22-cv-11091 Doc. No. 1], and

Plaintiff Responsible Offshore Development Alliance (the "Alliance") in Responsible Offshore

Development Alliance v. United States Department of the Interior, et al. ("Responsible") [1:22-

cv-11172 Doc. No. 1] bring claims against the Bureau of Ocean Energy Management

("BOEM"), the National Marine Fisheries Service ("NMFS"), the United States Army Corps of

Engineers ("Corps"), and other agencies and individuals.

---

[1] Two other challenges to the Project were filed this District. See Melone v. Coit, et al., 1:21-cv-11171-IT, appeal docketed No. 23-01736 (1st Cir. Sept. 8, 2023); Nantucket Residents Against Turbines et al. v. United States Bureau of Ocean Energy Mgmt., 1:21-cv-11390-IT, appeal docketed, No. 23-01501 (1st Cir. June 13, 2023), (together "the Related Actions").

[2] Both cases received new docket numbers upon transfer to this District, and all docket references are to the docket numbers assigned here.

In each action, the District Court for the District of Columbia granted Vineyard Wind's motion to intervene as unopposed, granted the government's motion to transfer the case to the District of Massachusetts, and denied another pending motion without prejudice. See Seafreeze 1:22-cv-11091, Vineyard Wind's Mot. to Intervene [Doc. No. 6], Defs.' Mot. to Transfer [Doc. No. 16], Jan. 19, 2022 Minute Order, Pls.' Mot. to Strike [Doc. No. 31]; Mem. and Order [Doc. No. 35]; Responsible 1:22-cv-11172, Vineyard Wind's Mot. to Intervene [Doc. No. 5], Pl.'s Mot. to Consolidate [Doc. No. 8], Defs.' Mot. to Transfer [Doc. No. 10]; Mem. & Order [Doc. No. 25].

After the cases were transferred to this court, Plaintiffs filed the pending Motions to Strike Documents from and Supplement the Administrative Record, Seafreeze, Mot. to Strike [1:22-cv-11091 Doc No. 56]; Responsible, Mot. to Strike [1:22-cv-11172 Doc. No. 43], and motions for summary judgment (which will be addressed in a separate order).

In light of the substantial overlap between the claims and parties in the above-captioned matters, the court consolidated the two matters following summary judgment briefing. Seafreeze, Hearing Tr. 61 [1:22-cv-11091 Doc. No. 112].

## II.   Background Concerning the Project

The following background is drawn from the Administrative Record, as certified by BOEM and NMFS, and is common to all four challenges to the Project in this District.[3]

---

[3] Certified Indices of the Administrative Record and addenda were docketed electronically, see Responsible, Federal Defendants' Notices [1:22-cv-11172 Doc. Nos. 17, 23]; Seafreeze, Federal Defendants' Notices [1:22-cv-11091 Doc. Nos. 26, 30, 34, 36]; Portions of the Administrative Record are docketed electronically as part of the parties' Joint Appendices filed in connection with the cross-motions for summary judgment, Responsible [1:22-cv-11172 Doc. Nos. 97, 98]; Seafreeze [1:22-cv-11091 Doc. Nos. 104, 105].

### A.  BOEM's Development of The Wind Energy Area

In 2009, BOEM began evaluating the possibility of developing wind energy in the Outer

Continental Shelf offshore from Massachusetts pursuant to BOEM's authority under the Outer

Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331, et seq. Final Environmental Impact

Statement ("Final EIS") Vol. II, BOEM_0068786 at -9170. In December 2010, BOEM published

an initial Request for Interest ("RFI") regarding wind energy development in the Outer

Continental Shelf offshore from Massachusetts. The RFI also invited public submissions on

environmental issues. Id.; see also Joint Record of Decision ("Joint ROD"), BOEM_0076799 at -

6802 (citing 75 Fed. Reg. 82,055 (Dec. 29, 2010)). In response to comments, BOEM reduced the

planning area by 50%. Final EIS Vol. II, BOEM_0068786 at -9170.

In February 2012, BOEM published a Call for Information and Nominations in the

Federal Register to gauge interest in commercial leases for wind energy projects. Id. (citing 77

Fed. Reg. 5821 (Feb. 6, 2012)). BOEM also published a notice of intent to prepare an

environmental assessment in connection with potential wind energy leases and site assessment

activities offshore from Massachusetts. Id.

In May 2012, BOEM identified a further reduced area for consideration for potential

wind energy development ("the Wind Energy Area") in the Outer Continental Shelf south of

Nantucket and Martha's Vineyard, Massachusetts, based on public comments concerning high

sea duck concentrations and an area of high-value fisheries. Final EIS Vol. II, BOEM_0068786

at -9170. BOEM then prepared an Environmental Assessment, regarding the proposed Wind

Energy Area, to guide its leasing. See 2014 Revised Env't Assessment, BOEM_0000090 at -118.

In June 2014, BOEM issued its Revised Environmental Assessment concerning the

proposed wind energy area. Id. At the time, BOEM concluded that leasing and site assessment

actions would not significantly impact the environment. Id. at -100.

On June 18, 2014, BOEM published a proposed sale notice and invited public comment

on a proposal to sell four wind energy leases in the Wind Energy Area. Final EIS Vol. II,

BOEM_0068786 at -9171. Following public comment, BOEM published a final sale notice

reflecting its intent to sell commercial wind energy leases in the Wind Energy Area, including

Lease "OCS-A 0501." See Final EIS Vol. II, BOEM_0068786 at -9171, -9235.

**B. BOEM's Award of the Lease**

In January 2015, BOEM conducted a competitive lease sale for Lease OCS-A 0501 (the

"Lease"), ultimately awarding the Lease to Offshore MW, LLC, later renamed Vineyard Wind 1,

LLC. Final EIS Vol. II, BOEM_0068786 at -9171. The lease area covers 166,886 acres in the

Outer Continental Shelf (the "Lease Area"). Id.; April 1, 2015 Lease, BOEM_0000764 at -0776.

The Lease became effective April 1, 2015. Id. at BOEM_0000764.

The Lease granted Vineyard Wind the right to seek approval for a Site Assessment Plan

("SAP") and a Construction Operations Plan ("COP"). Id. On November 22, 2017, Vineyard

Wind submitted a Site Assessment Plan ("SAP") to BOEM for the Lease Area. May 10, 2018

Approval of SAP, BOEM_0013366. On May 10, 2018, BOEM approved Vineyard Wind's SAP,

subject to numerous conditions, including for the protection of cultural resources, marine mammals and sea turtles, and implementation of mitigation measures. Id.

### C.  Biological Review(s) of the Project's Impacts by BOEM and NMFS

#### 1.  Environmental Impact Statement(s) prepared by BOEM

On December 19, 2017, Vineyard Wind submitted to BOEM for consideration under OCSLA a proposed COP for the Project to be constructed in 65,296 acres of the Vineyard Wind Lease Area, referred to as the Wind Development Area or "WDA." Dec. 19, 2017 COP Submission Letter, BOEM_0006004-06; December 19, 2017 COP BOEM_0001361-6003. On March 30, 2018, BOEM published a notice of its intent to prepare an EIS for the COP. 83 Fed. Reg. 13,777 (Mar. 30, 2018), BOEM_0012028. The notice described the Project and invited the public to participate in public comment and public scoping meetings BOEM later conducted. Id.; BOEM_012406-13078 (April 2018 meeting transcripts)). On December 7, 2018, BOEM published a notice of availability of the Draft EIS in the Federal Register. 83 Fed. Reg. 63,184 (Dec. 7, 2018), BOEM_0034694. As summarized in the notice, the Draft EIS analyzed the proposed COP and several alternatives, including different locations for cable landfall, reduction in project size, several options for turbine layout, and a no-action alternative. Id. The notice invited public comment and/or participation at public hearings BOEM later conducted. Id.; see also BOEM_035872-36269 (Draft EIS public meeting transcripts).

Vineyard Wind submitted numerous updates to the proposed COP over the course of BOEM's review. See Final EIS Vol. I, BOEM_0068434 at -8440 (listing prior iterations of the COP). The updates addressed comments from BOEM, modified the Project design envelope, and accounted for the possibility of higher capacity wind turbine generators, which would ultimately

reduce the number of wind turbines to be installed and reduce the total Project area. See, e.g., Jan. 22, 2021 Letter from Vineyard Wind to BOEM, BOEM_0067698-7701.

On June 12, 2020, BOEM published a notice in the Federal Register that the supplement to the Draft EIS ("Supplemental Draft EIS") was available on BOEM's website and invited public comment in connection with the notice and participation at public meetings BOEM later held virtually. 85 Fed. Reg. 35,952 (June 12, 2020), BOEM_0057578; June-July 2020 Public Meeting Transcripts, BOEM_058001-59241. BOEM prepared the Supplemental Draft EIS "in consideration of the comments received during the [National Environmental Policy Act] process and in connection with cooperating agencies." Supplemental Draft EIS, BOEM_0056950 at -6954. In particular, BOEM expanded its analysis of the reasonably foreseeable effects from cumulative activities for offshore development, included previously unavailable fishing data, considered a new transit lane alternative through the WDA, and addressed changes to the proposed COP since publication of the Draft EIS. Joint ROD, BOEM_0076799 at -6803-04; 85 Fed. 35,952 (June 12, 2020), BOEM_0057578; Supplemental Draft EIS, BOEM_0056950 at -6954. The transit lane alternative that was included was in response to a proposal from the Alliance for a northwest/southeast transit corridor to facilitate transit for fishing vessels from southern New England to fishing areas. Supplemental Draft EIS, BOEM_0056950 at -6958.

On December 1, 2020, Vineyard Wind notified BOEM that it was withdrawing the proposed COP from review in order to conduct a technical and logistical review of the turbines selected for inclusion in the final Project design. Dec. 1, 2020 Vineyard Wind Letter to BOEM, BOEM_0067649-50; see also Final EIS Vol. I, BOEM_0068434 at -8440 n.3. Vineyard Wind's notice of withdrawal indicated that Vineyard Wind intended to rescind the withdrawal upon completion of its due diligence review. Dec. 1, 2020 Vineyard Wind Letter to BOEM,

BOEM_0067649-50. On December 16, 2020, following Vineyard Wind's notification that it was

withdrawing the COP pending further technical and logistical review, BOEM published a notice

in the Federal Register stating that "since the COP has been withdrawn from review and

decision-making, there is no longer a proposal for major federal action awaiting technical and

environmental review, nor is there a decision pending before BOEM…[the] notice advises the

public that the preparation of an EIS is no longer necessary, and the process is hereby

terminated." Fed. Reg. 81,486 (Dec. 16, 2020), BOEM_0067694.

On January 22, 2021, Vineyard Wind notified BOEM that Vineyard Wind had completed

its review and "had concluded that the proposed turbines did not fall outside of the project design

envelope being reviewed in the COP" and requested that BOEM resume review of the COP,

most recently updated on September 20, 2020. Joint ROD, BOEM_0076799 at -6804.

On March 3, 2021, BOEM published a notice in the Federal Register stating it was

resuming preparation of a final environmental impact statement related to the COP. Joint ROD,

BOEM_0076799 at -6804. On March 12, 2021, BOEM posted the Final EIS, which consists of

1,600 pages in four volumes assessing the environmental, social, economic, historic, and cultural

impacts of the Vineyard Wind Project, from construction to decommissioning, on BOEM's

website and issued a notice of availability in the Federal Register. 86 Fed. Reg. 14,153 (Mar. 12,

2021), BOEM_0071036; see also Final EIS, BOEM_0068434-70061.

  *2. Biological Opinion*

On December 6, 2018, BOEM sent a request to NMFS to conduct a biological

consultation pursuant to Section 7 of the Endangered Species Act. BOEM ESA Consultation

Request, BOEM_0034533-4688. BOEM made the request in its capacity as the lead Federal

agency in the Section 7 consultation process for the Vineyard Wind Project on behalf of itself,

the Army Corps of Engineers ("Corps"), and NMFS Office of Protected Resources
("NMFS/OPR"). 2021 Biological Opinion, BOEM_0077276 at -7280. On May 1, 2019, NMFS's
Greater Atlantic Regional Office ("NMFS/GAR") agreed to initiate formal consultation to
consider the effects of the proposed actions on ESA-listed whales, including the North Atlantic
right whale, sea turtles, fish, and the critical habitat for various species that may be present in the
proposed action area. NMFS Initiation Letter, NMFS 16008. On September 11, 2020,
NMFS/GAR issued a biological opinion (the "2020 BiOp") pursuant to its obligations under
Section 7(a)(2) of the ESA on behalf of itself, BOEM, NMFS/OPR, and the Corps. Sept. 11,
2020 NMFS BiOp Transmittal Letter to BOEM, NMFS 16027-28; 2020 BiOp, NMFS 16029-
354. The 2020 BiOp concluded that the "proposed action may adversely affect but is not likely to
jeopardize the continued existence" of the North Atlantic right whales, among other species.
Sept. 11, 2020 NMFS BiOp Transmittal Letter, NMFS 16029; 2020 BiOp, NMFS 16029 at -
6317.

On May 7, 2021, BOEM requested that NMFS/GAR reinitiate its biological consultation.
2021 BiOp, BOEM_0077276 at -7281; May 7, 2021 Letter from BOEM to NMFS/GAR,
BOEM_0076721. On May 27, 2021, NMFS/GAR advised BOEM that it agreed that consultation
must be reinitiated and that it anticipated such consultation would result in a new BiOp that
would replace the 2020 BiOp. 2021 BiOp, BOEM_0077276 at -7281. The biological
consultation was reinitiated to consider (i) the effects of monitoring surveys identified in the
Joint ROD by BOEM, at NMFS's recommendation, as conditions of COP approval, which were
not considered in the 2020 BiOp, and (ii) new information concerning the status of the right
whale. 2021 BiOp Transmittal Mem., NMFS 017683 at -7683-84; BOEM Mem. to Record,
BOEM_077788-89.

On October 18, 2021, NMFS/GAR issued the reinitiated BiOp, and on November 1,

2021, NMFS reissued the reinitiated BiOp ("2021 BiOp") with corrections after typos and other

non-substantive errors were identified and corrected. See Oct. 18, 2021 NMFS Transmittal Letter

to BOEM, NMFS 16668; Nov. 1, 2021 Transmittal Letter, NMFS 17172; 2021 BiOp,

BOEM_0077276-7779. As discussed below, these are two of the documents that Plaintiffs seek

to strike from the Administrative Record. The 2021 BiOp states that it supersedes the 2020

BiOp. Nov. 1, 2021 Transmittal Letter, NMFS 17172 at -74; Oct. 18, 2021 NMFS Transmittal

Letter to BOEM, NMFS 16668 ("this Opinion replaces the Opinion we issued to you on

September 20, 202[0]"). In formulating its biological opinions, NMFS/GAR considered

documents prepared by BOEM, including each iteration of the EIS, Vineyard Wind's proposed

COP and updates, BOEM's COP Approval, and the Incidental Harassment Authorization issued

by NMFS/OPR, discussed further below. 2021 BiOp, BOEM_0077276 at -7285-86, -88, -63-64.

The 2021 BiOp analyzed the direct and indirect effects of the approved COP, the modifications

proposed by BOEM, and those proposed by NMFS/OPR in the IHA. Id. NMFS/GAR also

updated the 2021 BiOp to reflect the best scientific information available concerning right

whales and explain whether any of the new information affected the analysis. Oct. 15, 2021

Transmittal Mem., NMFS 17683 at -86-87.

Like the 2020 BiOp, the 2021 BiOp concludes the proposed action is not likely to

jeopardize the continued existence of the right whales. 2021 BiOp, BOEM_0077276 at -7657.

Also like the 2020 BiOp, the 2021 BiOp included an incidental take statement ("ITS") and

imposed reasonable and prudent measures and their implementing terms and conditions to

minimize and document the take of ESA-listed species. 2021 BiOp, BOEM_0077276 at -7657-

78; 2020 BiOp, NMFS 16029-354. The 2021 BiOp reflects that NMFS anticipates the incidental

take of up to 20 right whales by Level B harassment, harassment that has the potential to "disturb a marine mammal…in the wild by causing disruption of behavioral patterns," due to exposure to pile driving noise based on the "maximum impact scenario" for the Project. 2021 BiOp BOEM_0077660-62, -7299. The maximum impact scenario is defined as 90 monopiles being placed in the Wind Development Area, with 12 jackets, at a rate of one pile being driven per day, assuming only 6 decibels of attenuation, or reduction of sound through mitigation measures. 2021 BiOp, BOEM_0077276 at -7660-61. The 2021 BiOp notes that Vineyard Wind may install fewer turbines and models the corresponding decrease in likely harassment to right whales and other animals. Id. The 2021 BiOp concludes that "neither Vineyard Wind nor NMFS expect[s] serious injury or mortality to result from this activity, and therefore, NMFS has determined that an IHA is appropriate." Id. at -7284; see also id. at -7658 (reflecting in all modeled scenarios that no injury is anticipated with respect to right whales). BOEM and NMFS/OPR each adopted the 2021 BiOp. 2021 BiOp, BOEM_0077276 at -7788; NMFS 3557. The 2021 BiOp concluded, based on all scenarios modeled with 12 decibels of sound attenuation, that no right whales would be subject to Level A harassment, which is defined under the Marine Mammal Protection Act ("MMPA") as "harassment" that has the potential to injure a marine mammal. 2021 BiOp, BOEM_0077276 at -7299-300.[4] The 2021 BiOp includes an analysis of the effect of Project vessels, estimating that the Project will increase overall vessel traffic by 4.8% during the construction phase and by 1.6% during the operational phase of the Project. Id. at -7508. The 2021 BiOp concludes, based on traffic, combined with mitigation measures and other

---

[4] Vineyard Wind did not seek authorization for Level A harassment because it anticipated that that such harassment "will be avoided through enhanced mitigation and monitoring measures proposed specifically for North Atlantic right whales." 2021 BiOp, BOEM_0077276 at -7451.

requirements for project vessels, that it is "extremely unlikely that a project vessel will collide with a whale." Id. at -7527.

On December 1, 2021, NMFS filed a Memorandum for the Record regarding the issuance of the 2021 BiOp, reflecting that the NMFS Permits and Conservation Division (PR1) was adopting the 2021 BiOp. NMFS Mem. to Record, NMFS 3557. On January 20, 2022, BOEM determined, pursuant to 50 C.F.R. § 402.15(a), that "because the activities authorized under BOEM's COP approval—including the monitoring surveys—are subject to the terms and conditions and reasonable and prudent measures found in the 2021 BiOp, no further action is required in order for Vineyard Wind to proceed with construction and operation of the Project." BOEM Information Mem. to Record, BOEM_077788-89.

### D.  Other Agency Review[5]

#### 1.  Incidental Harassment Authorization

Meanwhile, on September 7, 2018, Vineyard Wind submitted a request under the MMPA to NMFS/OPR for an Incidental Harassment Authorization, seeking authorization of the likely incidental taking by harassment that may occur from impact pile driving in connection with the Project. Draft IHA Application, NMFS 14218-14550; Transmittal Email, NMFS 14451. In October 2018, and then January 2019, Vineyard Wind submitted revised versions of its IHA application to NMFS/OPR. Transmittal Emails, NMFS 14457, NMFS 14581; January 2019 Draft IHA Application, NMFS 14737-4984. The Vineyard Wind IHA Application was deemed

---

[5] The Vineyard Wind Project was also subject to review by other agencies whose actions were not challenged by Plaintiffs here or in the Related Actions. See Final EIS Vol. II, BOEM_0068786 at -9170-78 (discussing review under several other statutes, including the Coastal Zone Management Act, the National Historic Preservation Act, and the Magnuson-Stevens Fishery Conservation and Management Act).

complete on February 15, 2019. 84 Fed. Reg. 18,346 (April 30, 2019), NMFS 3392. Notice

inviting public comment on the proposed IHA was published in the Federal Register 74 days

later, on April 30, 2019. Id. The public comment period closed on May 30, 2019. Id.

Approximately two years later, on May 21, 2021, NMFS issued the IHA to Vineyard

Wind. May 21, 2021 Letter Issuing IHA, NMFS 3514; IHA, NMFS 3489-3509. On June 25,

2021, NMFS/OPR issued notice of its approval of an IHA under the MMPA, 16 U.S.C. §§ 1361,

et seq., NMFS 3415; see also 86 Fed. Reg. 33,810 (June 25, 2021) ("Notice of Issuance of

IHA"), NMFS 3515-3556. The notice responded to the public comments NMFS/OPR received,

explained the basis for the agency's decision, and described the mitigation, monitoring, and

reporting requirements that were imposed by the IHA. Notice of Issuance of IHA, NMFS 3515-

3556.

The IHA is valid from May 1, 2023, through April 30, 2024. IHA, NMFS 3489. The IHA

authorizes a maximum take by Level B harassment of 20 incidents to right whales. Notice of

Issuance of IHA, NMFS 3515 at -3551. The Notice of Issuance defines Level B Harassment as

"the potential to disturb a marine mammal or marine mammal stock in the wild by causing

disruption of behavioral patterns, including, but not limited to, migration, breathing, nursing,

breeding, feeding, or sheltering." Notice of Issuance of IHA, NMFS 3515 at -3532; see also 50

C.F.R. § 216.3.

2.   *Clean Air Act Permits*

On August 17, 2018, Vineyard Wind applied to the U.S. Environmental Protection

Agency ("EPA") for a permit under the Clean Air Act concerning construction of a wind farm.

2021 BiOp, BOEM_0077276 at -7282-83. On April 19, 2019, Vineyard Wind submitted a

subsequent application for an operating permit in accordance with 310 C.M.R. 7.00. Id. On June

28, 2019, the EPA issued a draft permit for public comment. Id. On May 19, 2021, the EPA

issued a permit to Vineyard Wind. Id.

     *3. Rivers and Harbors & Clean Water Act Permits*

On December 26, 2018, the Corps issued a public notice in the Federal Register regarding

proposed permits under the Rivers and Harbors Act and Section 404 of the Clean Water Act, to

permit Vineyard Wind to construct, maintain, and eventually decommission an 800 megawatt

wind energy facility, two electronic service platforms, scour protection around the bases of the

wind turbine generators and electronic service platforms, connection between the turbines and

the service platforms, and two export cables with scour protection within a 23.3 mile long

corridor. Joint ROD, BOEM_ 0076799 at -6803, -6807. The public comment period ran from

December 26, 2018, to January 18, 2019. Joint ROD, BOEM_0076799 at -6828. The Corps did

not receive any comments from the public during or after the public comment period. Id. The

Corps issued a permit, with special conditions, to Vineyard Wind on August 9, 2021. 2021 BiOp,

BOEM_0077276 at -7282.

**E.  The Approved Vineyard Wind Project**

On May 10, 2021, BOEM, NMFS, and Corps issued a Joint ROD adopting the Final EIS.

Joint ROD, BOEM_0076799-898. The Joint ROD consolidated the records of decision by each

respective agency, specifically, BOEM's action to approve the COP under OCSLA, the Corps'

issuance of permits under the Clean Water Act and Rivers and Harbors Act,[6] and NMFS/OPR's

---

[6] On August 4, 2021, the Corps issued a Record of Decision Supplement to "correct several
clerical errors contained in the [Army Corps] section of the [Joint ]ROD." Aug. 2021
Supplement ¶ 1, identically filed in Seafreeze [1:22-cv-11091 Doc. No. 58-3] and Responsible
[1:22-cv-11172 Doc. No. 44-3], for simplicity all references are to August 2021 Supplement are
to the Seafreeze docket. On January 14, 2022, the Corps issued an additional Record of Decision

Supplement "to correct a clerical error in the [Joint ]ROD and clarify a statement contained in the [Army Corps] section of the [Joint ]ROD." Jan. 2022 Supplement ¶ 1, identically filed in Seafreeze [1:22-cv-11091 Doc. No. 58-4] and Responsible [1:22-cv-11172 Doc. No. 44-4]; for simplicity all references are to January 2022 Supplement are to the Seafreeze docket. Both the August 2021 and January 2022 Supplements state that they have "no bearing on the BOEM or NMFS decisions documented in the [Joint ]ROD." Aug. 2021 Supplement [Doc No. 58-3]; Jan. 2022 Supplement [Doc. No. 58-4]. As discussed below, these are the other two documents that Plaintiffs seek to strike.

The August 2021 Supplement states that the Joint ROD had misidentified the length of the export cable corridor as 23.3 miles in five instances instead of 39.4 miles. Aug. 2021 Supplement ¶¶ 8, 10 [Doc No. 58-3]. It also states that the Joint ROD misidentified the total acreage of transmission as two acres instead of 17 in six instances. Id. The August 2021 Supplement reports further that, despite the erroneous figures, the Corps conducted their review based on more significant jurisdictional impacts, specifically, a cable corridor of up to 49 miles long. Id. at ¶ 7. It also explains that the errors were identified by Vineyard Wind during the permit application process. Id at ¶ 5.

The January 2022 Supplement states as to the clerical error that the Army Corps' public interest determination was cut off mid-sentence and omitted part of the following sentence:

> The issuance of this permit is consistent with National Policy, statutes, regulations, and administrative directives; and on balance, issuance of a USACE permit to construct the Vineyard Wind Project is not contrary to the public interest. As explained above, all practicable means to avoid and/or minimize environmental harm from the selected, permitted alternative have been adopted and required by the terms and conditions of this permit.

Jan. 2022 Supplement ¶ 2 [Doc. No. 58-4] (omitted portion underlined).

The January 2022 Supplement states as to the clarification that, in the General Public Interest Review section of the Joint ROD, a sentence concerning the impact of the Vineyard Wind Project to commercial fishing in the Project Area failed to attribute concerns about abandonment to concerned parties only. Id. at ¶ 3. The January 2022 Supplement states that the Joint ROD did not accurately reflect that "[t]his statement regarding the likelihood of abandonment of the area by commercial fisheries is based solely upon comments of interested parties submitted to BOEM during the public comment period," "is not based upon any separate or independent USACE or other agency evaluation or study," and that it "does not represent the position of the USACE regarding the status of commercial fisheries . . . ." Id. The January 2022 Supplement amends the Joint ROD to state:

> While Vineyard Wind is not authorized to prevent free access to the entire wind development area, according to comments submitted by interested parties to BOEM as summarized in Appendix K to the [Final Environmental Impact Statement], due to the placement of the turbines, it is likely that the entire 75,614-

issuance of an IHA under the MMPA. Joint ROD, BOEM_0076799-898. The Joint ROD reflects

that BOEM's approval of the COP would be subject to mitigation and monitoring measures

outlined in the Final EIS and any additional technical, navigational, and safety conditions

imposed by BOEM. Joint ROD, BOEM_0076799 at -6820-21, -6827.

On July 15, 2021, BOEM issued final approval of Vineyard Wind's COP under OCSLA.

July 15, 2021 VWI COP Project Easement and Approval Letter ("COP Approval Letter"),

BOEM_0077150-265. The Project, as approved, will involve 84 or fewer wind turbines to be

installed in 100 of the locations proposed by Vineyard Wind in the Wind Development Area, in

an east-to-west orientation, with a minimum spacing of 1 nautical mile each. Joint ROD,

BOEM_0076799 at -6821. The Project is located approximately 14 nautical miles south of

Nantucket Island and Martha's Vineyard at its nearest point. Final EIS Vol. II, BOEM_0068786

at -8863. As part of construction of the Project, project-related vessels will travel primarily from

New Bedford, Massachusetts, approximately fifty miles from the WDA, although some vessel

trips will originate in Canadian ports. 2021 BiOp, BOEM_0077276 at -7294.

BOEM's final approval is subject to numerous terms and conditions, including

compliance with all "statutes, regulations, and permits and authorizations issued by Federal and

state agencies for the [P]roject." COP Approval Letter, BOEM 077150 at -152. The COP

Approval Letter also noted that all activities authorized thereunder by BOEM "will be subject to

---

acre area will be abandoned by commercial fisheries due to difficulties with navigation.

Id. (added language underlined). The January 2022 Supplement was issued roughly one month after Plaintiffs filed their Complaint [1:22-cv-11091 Doc. No. 1], which specifically identified the error.

any terms and conditions and reasonable and prudent measures resulting from a BOEM-reinitiated consultation for the Project's BiOp." COP Approval Letter, BOEM 077150 at -7152. The IHA set forth a number of minimization and monitoring measures, which were incorporated into the conditions of the COP Approval and set forth in the 2021 BiOp. IHA, NMFS 3489-3509. Numerous other measures were laid out in the Joint ROD pertaining to right whales and other ESA-listed animals. See Joint ROD, Appendix A, BOEM_0076852-897. The mitigation measures include:

1. **Seasonal restriction on pile driving.** Pile driving is not permitted from January 1 through April 30 to avoid the time of year with the highest densities of right whales in the Project Area. Pile driving is not permitted in December, except in the event of unanticipated delays, and will require enhanced protection measures and approval by BOEM. 2021 BiOp, BOEM_0077276 at -7451-52; IHA, NMFS 3489 at -3490.

2. **A "soft start" pile driving procedure**. Vineyard Wind will begin pile driving activities with three rounds of three impact hammer strikes at a reduced energy, each followed by a one-minute waiting period. Vineyard Wind will use this "soft start" approach for each pile to be driven at the beginning of a day's pile driving activities, and at any point where pile driving has ceased for thirty minutes or longer. 2021 BiOp, BOEM_0077276 at -7458. This "soft start" procedure is designed to "provide a warning to any marine mammals" and the opportunity to disperse from the area prior to higher intensity pile driving, to reduce the change of Level A or Level B harassment of right whales. 2021 BiOp, BOEM_0077276 at -7458.

   Although NMFS expects soft-start procedures to reduce the effects of pile driving on right whales, NMFS was unable to modify the estimated taken numbers to account for such benefit because NMFS could not predict the extent to which soft start would reduce exposure. 2021 BiOp, BOEM_0077276 at -7458.

3. **The use of protected species observers.** Vineyard Wind must employ qualified, trained protected species observers ("PSOs") to conduct monitoring for marine mammals during pile driving activity. These individuals must be approved by NMFS and are subject to certain conditions, including that they must be independent observers, rather than construction personnel. IHA, NMFS 3489 at -3499-3500. At least two PSOs must be stationed on the pile driving vessel at all times sixty minutes prior to, during, and thirty minutes after pile driving. IHA, NMFS 3489 at -3490.

4. **Passive Acoustic Monitoring & Other Reporting**. Passive Acoustic Monitoring ("PAM") will be used to "record ambient noise and marine mammal vocalizations in the [L]ease [A]rea before, during, and after [construction] to monitor project impacts relating to vessel noise, pile driving noise, [wind turbine] operational noise, and to document whale detections in the WDA." 2021 BiOp, BOEM_0077276 at -7298. PAM-generated noise data must be interpreted by an expert trained to discern the species of whale making sounds detected. Id.

5. **The establishment of pile driving clearance zones.** Vineyard Wind PSOs must establish clearance zones for right whales between sixty minutes prior to pile driving activities and thirty minutes after completion of pile driving activities. The clearance zones range depending on the time of year from 2-10 km for visual and 5-10 km for PAM. Zones are the smallest from June to December 31, when the BiOp concludes there is a lower probability of right whales being present in the pile driving area. 2021 BiOp, BOEM_0077276 at -7319.

   Vineyard Wind vessels must also use all other available sources of information on right whale presence, including the Right Whale Sightings Advisory System, WhaleAlert app, and monitoring of Coast Guard channels to plan vessel routes. IHA, NMFS 3489 at -3496.

6. **Vessel Speed Restrictions.** Vessels must comply with the NOAA Ship Strike Rules' speed restrictions, that restrict speed to 10 knots in certain restricted zones. IHA, NMFS 3489 at -3497; see also 2021 BiOp, BOEM_0077276 at -7520. All vessels travelling over 10 knots must have a dedicated visual observer on duty at all times, such as a PSO or crew member. IHA, NMFS 3489 at -3496. Where a crew transfer vessel is not subject to the 10-knot speed limit, it must employ an additional PSO or other enhanced detection method to monitor for right whales, in addition to PAM. Id. at -3497.

7. **Heightened Measures in Dynamic Management Areas and Slow Zones.** Dynamic Management Areas ("DMA"), as defined by the 2008 NOAA Ship Strike Rules (73 Fed. Reg. 60,173), are temporary protection zones designed to reduce lethal right whale strikes and are triggered when three or more whales are sighted within 2-3 miles of each other outside of the seasonal protection zones, See 2021 BiOp, BOEM_0077276 at -7675. NMFS adopted an additional protective measure, referred to as Right Whale Slow Zones, based on acoustical detection of a vocalizing right whale. When a right whale is detected acoustically, notifications of a "Slow Zone," covering a protective circle with a radius of 20 nautical miles from any point of detection, are triggered. Id.; see also NOAA Fisheries, Help Endangered Whales: Slow Down in Slow Zones (Dec. 23, 2021) available at https://www.fisheries.noaa.gov/feature-story/help-endangered-whales-slow-down-slow-zones. In instances where a DMA or Slow Zone has been triggered, NMFS requires that Vineyard Wind use an increased number of PSOs, and establish an extended exclusion zone with PAM, in addition to other

restrictions established by the rules pertaining to DMAs and Slow Zones. 2021
BiOp, BOEM_0077276 at -7675.

As the 2021 BiOp acknowledges, numerous mitigation measures are designed not only to
protect right whales from harassment, but also to protect other species. For instance, Vineyard
Wind is required to implement PSOs for several species of sea turtles, and the soft-start pile
driving procedures are designed to disperse any undetected sea turtles, right whales, and other
marine species from the Area. See 2021 BiOp, BOEM_0077276 at -7480-82, -7458.

### III.    Plaintiffs' Challenges to the Administrative Record

Plaintiffs assert that the 2021 Biological Opinions and the August 2021 and January 2022
Supplements to the Joint ROD offered by the Army Corps should be stricken and also that the
Record should include supplemental exhibits offered by Plaintiffs. See Seafreeze, Mot. to Strike
[1:22-cv-11091 Doc. No. 56]; Responsible, Mot. to Strike [1:22-cv-11172 Doc. No. 43].[7] The
court denies both requests for the reasons set forth below.

### A.  Motion to Strike Documents from the Administrative Record

Plaintiffs argue that the final agency action at issue occurred on May 10, 2021, when the
Joint ROD was issued, and that these later-issued documents should not have been included in
the Administrative Record. Mot. to Strike Mem. 4 [Doc. No. 57]. Defendants: (1) disagree that
the Joint ROD was the final agency action; (2) assert that, as to the Army Corps' Supplements
and the updates and correction to the Biological Opinion, agencies have the power to correct
ministerial errors; (3) assert that even if the errors were more than clerical, the errors were
harmless; and, (4) assert that as to the substantive changes to the Biological Opinion, the update

---

[7] The motions and oppositions filed in each case are identical. For simplicity, the court cites to
the Seafreeze docket only for this discussion.

was permissible, contemplated by the Joint ROD, and required to ensure BOEM remained in continued compliance with the ESA. Fed. Defs.' Opp'n to Mot. to Strike 11-12, 17-18 [Doc. No. 58].Fed. Defs.' Opp'n to Mot. to Strike 11-12, 17-18 [Doc. No. 58].

Whether the Joint ROD was final agency action is of little relevance to whether Defendants were entitled to supplement the Record in this instance. Government agencies have the power to correct ministerial errors, so long as such power is not used "as a guise for changing previous decisions." See Am. Trucking Ass'ns v. Frisco Transp. Co., 358 U.S. 133, 146 (1958). Here, nothing before the court suggests that the Supplements amount to more than mere corrections or clarifications. Neither Supplement contains information that was *not* before the Army Corps at the time the Joint ROD was issued. Where the Supplements address issues of misprint or misattribution, the information added was reflected elsewhere in the Record, and the clarifications do not reflect some fundamental change in either the decision-making process or the information considered.

As to the 2021 Biological Opinion, where BOEM was under a statutory obligation under the ESA to reinitiate consultation in certain instances, and that statutory obligation and the re-initiation of such consultation were both reflected in the Joint ROD, the court finds no basis to exclude the document from the Administrative Record. While Plaintiffs may challenge the conclusions of the 2021 Biological Opinion or the process surrounding it, neither challenge is a basis to strike the document from the Administrative Record.

Moreover, Plaintiffs do not identify what corrections were made to the Biological Opinions, let alone why those corrections were improper and warrant exclusion from the Administrative Record. Accordingly, Plaintiffs' Motion to Strike portions of the Record is DENIED.

### B. Plaintiffs' Request to Supplement the Record

Plaintiffs also seek to supplement the Record before the court with eight exhibits.[8] Plaintiffs contend these exhibits should be considered because (i) they demonstrate "fatal flaws associated with the [Project]," (ii) would assist the court in understanding the "highly complex technical record," (iii) "would provide useful background information . . . regarding the true reasons behind the . . . issuance of the Vineyard Wind lease and approval of the [Joint] ROD," and (iv) "would assist the [c]ourt in determining the extent of . . . 'bad faith or improper behavior'" engaged in by Defendants when supplementing the Administrative Record. Mot. to Strike Mem. 2 [Doc. No. 57]. Defendants and Vineyard Wind oppose the offered exhibits as outside of the Administrative Record and not subject to any exceptions to the rule against supplementation. Fed. Defs.' Opp'n to Mot. to Strike 4-9 [Doc. No. 58]; Vineyard Wind Opp'n to Mot. to Strike 12-19 [Doc. No. 59].

---

[8] The exhibits are: (1) a collection of emails with officials from the State of Rhode Island regarding a state open meeting law violation [Doc. No. 57-2], (2) Minutes of a January 3, 2019 meeting of the Rhode Island Coastal Resources Management Council's Fishermen's Advisory Board [Doc. No. 57-3] (3) a July 2006 study titled "Effects of offshore wind farm noise on marine mammals and fish" [Doc. No. 57-5], (4) Comments from Seafreeze Ltd. dated August 27, 2020 in response to a U.S. Coast Guard Request for Comment Notice concerning a Port Access Route Study in the Northern New York Bight [Doc. No. 57-6], (5) Document titled "High Frequency Radar Wind Turbine Interference Community Working Group Report" dated June, 2019 [Doc. No. 57-7], (6) Comments from Seafreeze Ltd. dated June 22, 2018, regarding "BOEM Proposed Path Forward for Future Offshore Renewable Energy Leasing on the Atlantic OCS- BOEM-2018-0018" [Doc. No. 57-8], (7) Document titled "New England Wind Lease Area Transit Corridor Workshop Summary," dated October 31, 2018 [Doc. No. 57-9], (8) Document titled "Vineyard Wind Meeting Summary," dated December 20, 2018 [Doc. No. 57-10].

A ninth exhibit offered by Plaintiffs, Exhibit D [Doc. No. 57-4], is already in the Administrative Record. See BOEM 0037799–0037807.

Under the APA, a reviewing court is required to "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. The Supreme Court has held that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Camp v. Pitts, 411 U.S. 138, 142 (1973). Supplementation on judicial review "is therefore the exception, not the rule, and is discretionary with the reviewing court." Town of Winthrop v. FAA, 535 F.3d 1, 14 (1st Cir. 2008). The First Circuit has established only two limited exceptions to the rule against supplementation. First, where supplemental evidence may facilitate comprehension of the record or the agency decision, such as where the decision involves "highly technical, environmental matters" or where the court is faced with a "failure to explain administrative action as to frustrate effective judicial review." City of Taunton, Mass. v. U.S. EPA, 895 F.3d 120, 127 (1st Cir. 2018) (first quoting Valley Citizens for a Safe Env't v. Aldridge, 886 F.2d 458, 460 (1st Cir. 1989) (Breyer, J.); then quoting Olsen v. United States, 414 F.3d 144, 155-56 (1st Cir. 2005)). Second, "a 'strong showing of bad faith or improper behavior' may also provide occasion to 'order[ ] the supplementation of the administrative record.'" Id. (quoting Town of Norfolk v. U.S. Army Corps of Eng'rs, 968 F.2d 1438, 1458-59 (1st Cir. 1992)). Although the First Circuit has acknowledged that other exceptions may exist, it has declined to recognize any. See City of Taunton, 895 F.3d at 128 (declining to permit supplementation of the record to allow Plaintiff to respond to arguments raised by an amicus brief).

Plaintiffs have not met the high burden of demonstrating that any of the offered Exhibits should be considered. First, while Plaintiffs contend the evidence would demonstrate flaws in the Project or assist the court in understanding the Record, they do not explain what specific information these Exhibits offer that is not available to the court in the Record before it. Second,

although Plaintiffs contend these Exhibits will assist the court in determining the extent of bad

faith or improper behavior engaged in by Defendants in supplementing the record, the First

Circuit requires a ***strong showing*** of bad faith or improper behavior to permit supplementation,

See id. at 127, and Plaintiffs have not made any such showing.

Accordingly, Plaintiffs' request to supplement the Record is also denied.

## IV.     Conclusion

For the foregoing reasons, Plaintiffs' Motions to Strike Documents from and Supplement

the Administrative Record, Seafreeze, Mot. to Strike [1:22-cv-11091 Doc No. 56]; Responsible,

Mot. to Strike [1:22-cv-11172 Doc. No. 43], are DENIED.

IT IS SO ORDERED

September 25, 2023                              /s/ Indira Talwani_____
                                               United States District Judge